Can you hear me now? We can. Just like Verizon. Before you go, I know you have a prepared speech, but I just want to ask you something. We've had an interesting development in this case. We originally had a lot of issues that brought some constitutional and other challenges. But we asked Judge Schimito to clarify her ruling from before, and we now know that she permits you to amend your complaint, which means you probably don't have an appealable order, which means we probably don't have jurisdiction to hear this. Would you comment on that? In terms of jurisdiction in the 2018 complaint, I want to make a distinction, and maybe not everybody in the audience knows, but in the 2017 complaint… The only one we have in front of us is 2018. Thank you. Put aside your appeal from the denial of the preliminary injunction. We all think we have jurisdiction over that. You have a bunch of First Amendment claims, and the judge struck the complaint. As Judge Smith said, we went back to her and said, did you mean to throw it out forever or did you mean to give them another chance? And she basically said in the order that she sent back to us, oh, they can have a do-over. They can replead those. That's what her order said. Doesn't that make the judgment with respect to everything but the preliminary injunction not appealable? I think the way that I read it… I think he's looking for a yes or no. Well… Is that in your vocabulary? The answer is yes. But of course, lawyers are paid almost by the board. Yes. But we're not. We're in a fixed salary. And yes, it is an option. Well, it's not only an option. It's a requirement, isn't it? We don't have jurisdiction. Okay. Thank you. In terms of the jurisdiction, the way that I read the clarifying order is that she said she left a road map of multiple ways that state law preservers are being… So that your claim was not dismissed with prejudice with respect to the First Amendment. That is correct. She said you may reassert it. You can do it in the 2017 action. You can do it in the 18 action. I might stick…combine them both together and you can do it there. So that issue is no longer in front of us, is it? In other words, we don't have a final appealable order. We don't have a final appealable order. Okay. So we…so those of us who aren't paid by the board can put that issue aside and turn to the issue of the injunction, correct? Okay. Yes? Yes. Okay. Okay. Go ahead. All right. So we will focus on the preliminary injunction order in terms of the entire case. I want to make sure that I'm understanding… The injunction you sought was to stop the city of Scottsdale from interfering with petition gathering to put a proposition on the city ballot at the last general election that dealt with construction or development in the McDowell Preserve, correct? That is correct. In the temporary restraining order preliminary injunction motion that we filed, we requested seven claims for relief. Okay. So if we were to remand that to the district judge today, what relief could she give? She would be able to give all, if not all, most. Can she enjoin? Enjoining development on the preserve is moot because there's already a law that enjoins development on the preserve absent of other people, correct? That is correct, except that I think the ballot initiative that passed in the law that passed stopped the development. But that wouldn't necessarily prevent the city of Scottsdale from beginning or starting that process. But why are you entitled to that? I mean, there's no law that prevents them from beginning or starting that process. So I'm not sure what relief, injunctive relief, you still think you're entitled to. In terms of the development, the first cause, which is the development on the desert preserve, the Sonoran Mountain Preserve. Are you preparing a new petition? That's, I guess, potentially what... Well, but I'm not just saying what I asked. Is there a petition gathering, is signature gathering a process that you want the city not to interfere with? It's currently not in process. So there's no... The Sonoran Mountain Preserve is working towards... So what is there to restrain? The restraining would be the continuation of Sonoran Preserve's political action committee's right to go get signatures, go out to the community and... Well, that's the question that my colleague just asked me. He said you weren't doing that, to gather signatures to start the process again. No, no, that's absolutely... That's for the 2020 election. We're kind of waiting to see how we have the protection in place. So as for the 2020 election, is there any evidence that they're interfering at the moment with any collection, signature collection gathering activity? Currently, there is no collection gathering that's taking place. So there's no injunction you need to stop them from interfering with it because it's not going on? That's not necessarily true. What's happening here is the Save Our Preserve, and we've led this, but the Save Our Preserve is comprised of between 125 and 150 volunteers of either money or donors of time. They were volunteers of time and donors of money. And they were going out to get signatures in... They may have done bad in 2016. Let's assume that for the moment. They're going to say they did. I don't care. The question is, what injunction would we give you today? What relief would we give you today? The world has moved on since then. Specifically, the request that we have would still apply. It should be that there wouldn't be... In joining, specifically, in joining cities, special agents or employees, including police officers, from seizing volunteers and property and Save Our Preserve signs without advance notice that the property or sign is unsafe or creates a violence. Do you have any signs out? Currently, no. The court's open. I mean, if you put signs out and they seize them, you can go back and ask for something. But I'm trying to figure out, on this record, what dispute still remains with respect to injunctive relief. Because SOP, Save Our Preserve, does have ongoing... Because it's ongoing and Save Our Preserve is still going to be active in the 2020 election cycle, the volunteers that have been out to gather signatures, they've stopped attending. They've stopped going because they feel pressure from the police or from the city. Well, let me ask the question differently. The case gets remanded to the district court. You can surely seek injunctive relief with respect to any illegal current activity that you think the city is involved in. But I'm trying to figure out why the dispute over what the city did in 2016 is still alive. Well, it was in 2016, 17, and even to the beginning of 2018. All dates behind us. And when the judge denied the preliminary injunction, what year was that? 2018. I'm sorry, there was just a dismissal of the 2018 complaint, and then 2017 is when... But as we're here today, there's no petition gathering going on. That's correct. There's no signs being put up. And no interference. What can we do for you? There's no development on the pursuit. You can place an injunction that would stop the city... From even thinking about doing this, right? Creating a notice. Right now, the way that it plays out is that whenever the volunteers will go out to gather signatures, the police arrive and then start telling them that they need to go in... That's happening right now? That's happening right now? They don't do it anymore because they've been pushed out. Is that in the record? Yes. They're currently doing that, and that's in the record? Well, it was at the time that we filed the complaint. You can make a new record, but the record we have in front of us only deals with activity that no longer occurs, correct? I'm sorry, I'm misunderstanding. Is there anything in this record that tells us that the city of Scottsdale is currently engaging in any activity that you believe to be illegal? We have the video evidence that we submitted, although it is... That's history. That's history, correct. We don't have it. That's going on today. When we applied for that application, I was a little sad. The problem we're wrestling with, counsel, is this. You had an election that was going to be coming up. You wanted to gather signatures. You complained about all these things that the police and others did in the city. It turns out that you didn't get enough signatures. Somebody else did, and 420 was passed. All of the relief you sought apparently is already part of the ordinance in the city of Scottsdale. I can't find anything that you have asked us to do that pertains to the current situation. You do speak to the past, but not to the current situation. Isn't it a classic mootness issue here? It's just done. It's over. And as a matter of injunctive law, what can we do? What do we restrain? There's nothing going on. The request for injunctive relief and the request for having the officers join from count number five would be something that would apply to all public groups, not just SOP. And it would be something that would allow the Save Our Preserve members to then begin reengaging. So you're looking for a blanket injunction stopping all police everywhere in the world from doing this? Is that what you're looking for? This is limited to the city of Scottsdale. Okay. Are you representing everybody? Where's the standing? You have your own issue. But you've already told us nothing's going on with respect to you. You might do it. And as my colleague has pointed out, you can build a record. You can file a new lawsuit. But what you complained about before, the election's over. It's done. It's over. There's nothing. If we granted you your injunction, it wouldn't change anything. Well, and that's as far as just point number five. Remember, there were seven of these requests for relief. So there are others in terms of submitting written petitions and having those written petitions acted upon by the city council. Do you have a petition to be acted? Well, what happens is the answer is no. The answer is no. But because we have two. That's in this record? Yes. The answer is yes, it's in the record. There are two. And the reason that is. In this record, there are two petitions that have been submitted to the city council. Correct. And the relief you want, only one person gets to talk. Thank you. Actually, two, but we talk at the same time. Sure. What does the record show with respect to those petitions? The record shows that in March of 2017, Mr. Stewart went to the city council and submitted a written petition. And then the city council acted opposite the city charter, which the city charter does not give the city council permission to take no action. You described all of that in your original complaint. The district court found throughout your complaint. But as now said, you can go back and restructure that complaint, bring in new information, and presumably bring in the chilling effect of past activity. But that's all in the future, right? The answer is the submission of the complaint is in the future. So the city council threw out a petition three years ago. It took no action. It took no action. What are we going to do? You're writing the injunction for me. What does the injunction say? That the city council has to follow the city charter and can't just make the decision to take no action. The city charter requires an action to be taken by the city council. So you're seeking something in the nature of mandamus? Correct. You're seeking to restrain them from not acting? Correct. Did you seek mandamus? There was a mandamus request in our appeal, yes. Is the mandamus in front of us? I don't remember seeing any request for mandamus. Forgive me, then, on that. Bottom line is, what can we do? What can we do to help you? I mean, everything you've complained about occurred in the past or is part of a state action. The district judge has said you can amend your complaint. If you've got something new, as my colleague pointed out, you can certainly do that. But I frankly don't know what we can do for you. What you've asked for now is part of it is unavailable. The rest of it, it's all in the past. It's all done. What do we do? Let me answer that. You can get damages for what they did in the past. That's the whole purpose of amending your complaint. But an injunction, I'm trying to figure out what we're stopping you from doing. Plus, you can't appeal damages at this point. Right. So, I'm sorry to go against your question. I want to be able to answer that. Well, no, I'm saying, I want to make it clear. The judge said you could amend your complaint and you can seek damages against the city for all the bad things you allege they did. I'm still stuck on what are we going to restrain them from doing at this point in time? You'd be restraining them from violating Save Our Preserves volunteers and Save Our Preserves civil rights to participate in elections. You mean just in a blanket basis? Well, again, via the specific request, we would keep the police officers and require the police officers to simply provide a notice to anybody that's gathering signatures that they're creating a health and safety hazard, that signs that are out are creating health and safety hazards for their cities. Without regard to the facts in front of us right now. We don't know whether or not a future volunteer may be putting up an illegal sign or creating a hazard. But we're supposed to now, the reason that you're not representing yourself in this case, sir, is that he's here. We're supposed to adjoin them from what? From violating their own charter. Violating their own charter and violating also the volunteers, SOPs and the volunteers' civil rights and rights to participate in elections in Chicago. Do you want to save any of your time here?  So, let's hear from the city. Is there anything left? Good morning, Your Honor. Scott Claus, Dickinson-Wright. On behalf of the city of Scottsdale, I'm going to assume SOPs saw a conjunction. First, thank you for coming to ASU. On behalf of ASU and my class, you better be sitting behind me right now. We thank you for doing this. It's very important and helpful. Your Honors have covered most of the ground. Have we covered all of it? He says, I agree. My civil rights claims for damages remain viable and I'm going to make them an amended complaint. I have the ability to make them an amended complaint. So that's right in front of us. Is there any live controversy with respect to the injunction? There is not, Your Honor. Do we have to decide anything else other than that? You do not, Your Honor. So, isn't that your whole argument? It is, Your Honor. I want to both train myself and, again, the class sitting behind me. They better be. The lawyers need to know when to shut up. But there are two things that I just want to address in the argument made by SOP just so the Court is disabused of those notions. And it brings to mind my favorite illegal quote, which is from Don Adams, which is that facts are stubborn things. Your Honor asked about, and Your Honor asked about, what can we enjoin? And the answer was you can stop the City of Scottsdale from interfering with SOP's volunteers. The evidence produced in the District Court by SOP, again, the evidence produced by SOP in the District Court, demonstrates unequivocally that as of October 2017, SOP has no volunteers. The affidavit, the declaration... That's a merits argument, isn't it? What you're saying is if the case is not moved, we should nonetheless affirm the injunction. Well, what I'm saying, Your Honor, is that if the case is not moved, this Court can't revisit under Doe v. Trump, this Court can't revisit the factual conclusions, or it should not revisit the factual conclusions of the trial court. It only has to ask one question, that the trial court get the law right and the trial court got the law right because it applied the winter factors. And when the Court applied the law to the evidence presented by Save Our Preserve Political Action Committee, it concluded that what Save Our Preserve Political Action Committee was saying was accurate, that it had no volunteers. Counsel, with respect, I thought that she focused on the fact that there was no likelihood of success under the law and didn't really get into the other winter factors. Actually, Your Honor, the Court focused on three things. It's on page 5 of the excerpt of the record. It is the fact that the preliminary injunction sought by SOP was vague, that the preliminary injunction sought by SOP was overbroad, and that SOP had not met its evidentiary burden to demonstrate a likelihood, and this is what Your Honor is focused on, a likelihood of injury in the future absent injunctive relief. So I take it your position is affirmed the denial of the request for a preliminary injunction, correct? Yes, Your Honor. And the other aspects of the case are in limbo because Judge Humatiwa has now told us that she will accept an amendment if she wants. Sure, Your Honor. And we don't know what that amendment will be, but we do know this. If they go back to district court and refuse to amend, she'll enter a final judgment and there'll be something to appeal from, and that's what your arguments are directed about. And there's no need to talk about anything else, is there? There is not, Your Honor. Further affiance saith not. I never use that phrase. Again, thank you, Your Honor. I think we asked so many questions and I'm not sure counsel got a chance to talk uninterrupted for a minute. If you promise not to ask... I won't ask any more questions. All right, on the basis that my colleague is not going to ask you anything, we're going to give you two minutes to talk. That doesn't sound too good. Thank you. I want to speak briefly about that there is a current growing concern. In the complaint and the request for the temporary restraining order, we did submit a couple of affidavits, and the affidavits did indicate that they're signed by volunteers and state that they will go back, rightly, to their signature gathering once there's protections for them and they can be free and clear from harassment. Second, we never really touched on remand, I guess. I don't know what the decision will be in terms of jurisdiction or whether it's moot, but remand to a new judge hasn't been something that we've discussed. Finally, as far as the... I know we promised not to interrupt you, but that is an extraordinary remedy to ask the court of appeals to tell the clerk of court for the District of Arizona to assign this to another judge. And it only occurs where there's blatant evidence on the record of either impropriety or the like. Is there any of that here on the record? She ruled against you, and you don't like that. Is that, standing alone, a reason to have it assigned to another judge? And that answer alone is no, but if you look at the totality of the 2017 case, which is not necessarily in front of us, there's significant delays in terms of getting the motion to dismiss her. I think that took six months... So she's slow. Correct. That's deprivation... You got a case that says if a judge is slow, we can give it to another judge? There is no case. And then finally, in regards to... Okay. All right. Thank you both. Thank you all. The case just argued is submitted, and the court stands in recess for the day.
judges: Hawkins, M. Smith, Hurwitz